PRETO v. CRAVEN & LANG

(June 2, 1930. Opinion and Decree.)
(July 1, 1930. Rehearing Refused.)
(August 7, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

M. E. Scharf and M. E. Kranz, of New Orleans, attorneys for plaintiff, appellant.

· Gordon Boswell, A. R. Christovich and Wm. A. Porteous, Jr., of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiff seeks to recover damages for the death of her husband, who died as the result of being struck by a large piece of old lumber as it was being removed by a mechanical shovel from the curbing of a sidewalk during the preparation of a street for repaving.

Decedent was over 82 years old and had practically retired from actual participation in his tinsmith business, which he had turned over to his son. He, however, made it a regular practice to spend a substantial portion of his time at or near the shop, which was located in the yard adjacent to the sidewalk on which he was standing at the time of the accident, and which yard opened upon the street through a large double gate, immediately in front of which the mechanical shovel was working.

Defendants, general contractors, were engaged in the carrying out of a contract for the repaving of Dauphine street, and in doing this were removing the old street surfacing and the wood curbing of the old gutters. They were using a mechanical digger, which consisted of a portable power plant, which operated a long arm or boom, to the end of which was attached a bucket, or scoop.

The gutter curbing consisted of heavy pieces of pecky cypress lumber of various lengths. In removing these the operator of the machine forced the bucket or scoop under the loose end of each piece of lumber and then, by raising the bucket, caused the lumber to break away from the curbing and to stand in a semi-upright position, one end on the bucket and the other partially attached to the remaining portions of curbing. As each piece of lumber was placed in this position, the bucket would be allowed to slide quickly under the lumber to about its middle and then, by a sudden raising of the bucket, the lumber would be entirely broken away from its former position and would be lifted by the digger and placed upon one of the waiting carts.

The machine had been working in that immediate vicinity for several weeks and during that time, on one or two occasions, curbing had broken away and had swung partially across the sidewalk.

No barriers were erected to prevent pedestrians from coming into dangerous proximity, and the decedent had made it a regular practice to stand and watch the operations.

Several different times he had been warned that it was dangerous to stand too close and, just prior to the accident, two persons employed in the work had cautioned him about the danger. As a result of these warnings he had stepped away from the danger zone, but at the last moment had taken a step or two back towards the machine and, unfortunately, just as he did so, a piece of curbing broke away from the remaining portion and struck him. He was taken to the hospital where he later died, after suffering considerable pain.

Plaintiff contends that to remove curbing in the manner adopted by the defendants was negligence and that, as there was at all times grave danger that some portion of the curbing or of the digger might suddenly swing over the sidewalk, barriers should have been erected to prevent pedestrians from entering the danger zone.

Defendants maintain that they were following the most approved method of doing the work; that it is not customary to barricade the sidewalk adjacent to such operations; that whenever there was danger to passers-by, warnings were given; that decedent had been cautioned several times and that the cause of the accident was his suddenly returning to a position of danger when it was too late to stop the machine or to otherwise avoid striking him.

We have experienced no difficulty in reaching a conclusion as to the law applicable. Manifestly, if a sidewalk adjacent to reconstruction work is left open, a pedestrian may assume that it is safe for him to pass, unless the nature of the work is such as to indicate to any normal person that there is danger. Smith v. Cumberland Telephone & Telegraph Co., 7 Orl. App. 371; Reilly v. Barber Asphalt Paving Co., 155 App. Div. 108, 140 N. Y. S. 16; Shalata v. Rodgers, 189 App. Div. 228, 178 N. Y. S. 494; Corpus Juris, vol. 43, "Municipal Corporations," page 1113.

"The general rule applicable to cases of this character is that persons lawfully making use of the streets and sidewalks within the limits of municipal corporations have the right to assume that they are safe, and that, where one sustains injury by reason of the unsafe condition of such thoroughfares, the burden to show that he contributed to such injury by his own negligence rests upon the corporation. Robertson v. Town of Jennings, 128 La. 806, 55 So. 375; Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455; McCormack v. Robin, 126 La. 594, 52 So. 779, 139 Am. St. Rep. 549." Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, 59.

If the sidewalk is not barricaded, and pedestrians are thus given the right to assume that no unforeseen danger will attend their passage, extreme care must be taken to prevent injuring them and special warnings of unexpected dangers must be given them.

"Even an adult has the right to presume that a public passage way is safe, and is not negligent for not looking for an unlawful obstruction." Buechner et ux v. City of New Orleans, 112 La. 599, 36 So. 603, 605, 66 L. R. A. 334, 104 Am. St. Rep. 455.

If persons are attracted by mechanical operations and stand in too close proximity, it is the duty of those conducting the operations, and who are familiar with

the possible dangers, to caution those persons who are dangerously near to remove themselves to positions of safety.

But where such warning is given and is heeded, no liability results if, suddenly, and without warning, the person warned returns to a dangerous place and is hurt before the other party has an opportunity to avoid the accident.

The only disputed question of fact is whether decedent placed himself in a position of danger when it was too late to avoid him. This question of fact has been decided by the trial judge in favor of defendant, and we believe that the record warrants his finding. Not being manifestly erroneous, it should not be reversed.

It is evident that the old gentleman was most anxious to secure for use as firewood the curbing which was being removed, and we are convinced that, as the timber in question was about to be lifted, he stepped towards it, possibly for the purpose of guiding it to his own sidewalk so that he might the more easily obtain possession of it.

At any rate it is certain that he was several times warned away from the machine and that, just prior to the accident, he had walked away from it and had assumed a position of safety. Defendants' employees were justified in believing that they could safely proceed with the work, and they had no opportunity to avoid him after he returned. In fact the operator, though he had concentrated his attention on the work he was doing, stopped his machine as soon as he saw the old man in the dangerous position. But it was then too late.

Had the old gentleman been merely walking along the sidewalk when the accident occurred, we would have felt justi-fied in holding that his presence there did not constitute contributory negligence. But such was not the case. He had been repeatedly warned to leave the danger zone and, by his apparent compliance with those warnings, he had allowed the operators to believe that, so far as he was concerned, there was no longer any danger in their continuing operations.

Counsel for plaintiff attack the credibility of several of the witnesses of defendants. A careful reading of the record leads us to the belief that we would not be warranted in reversing the finding of the trial judge, who saw and heard the witnesses to whom we have referred.

The judgment appealed from is affirmed.